# United States District Court
## Eastern District of California

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| V. | |
| **Larry Robert McIver** | **DOCKET NUMBER: 6:22-mj-00021-HBK** |

I, John Hesdon, Law Enforcement Park Ranger, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In Yosemite National Park, in the Eastern District of California, Larry Robert McIver did or was:

**Count 1:** Present in a park area while under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources in violation of Title 36 Code of Federal Regulations § 2.35(c)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 2:** Operating or being in actual physical control of a motor vehicle while under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation in violation of Title 36 Code of Federal Regulations § 4.23 (a)(1)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 3:** Operating or being in actual physical control of a motor vehicle while he alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath in violation of Title 36 Code of Federal Regulations § 4.23 (a)(2)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 4:** Stopping or parking a vehicle upon a park road in violation of Title 36 Code of Federal Regulations § 4.13 (a)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 5:** Carrying or storing a bottle, can or other receptacle containing an alcoholic beverage that is open, or has been opened, or whose seal is broken or the contents of which have been partially removed, within a motor vehicle in a park area in violation of Title 36 Code of Federal Regulations § 4.14 (b)

| | |
|---|---|
| Speedy Trial Act Applies: **No** | U.S. v. **McIver** |
| | Criminal Complaint |

**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 6:** Operating a motor vehicle without due care in violation of Title 36 Code of Federal Regulations § 4.14 (b)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

I further state I am a commissioned Law Enforcement Officer with the National Park Service. This complaint is based on the following facts and information observed by me and or provided to me by other National Park Service Law Enforcement Rangers.

*I have five years of experience as a law enforcement ranger for the National Park Service. I attended a weeklong training in detection of individuals driving under the influence and standardized field sobriety tests (SFSTs) in 2016 as part of an NPS Law Enforcement academy, I also attended a similar training at the Federal Law enforcement training center in 2018. I am certified in the NASBLA seated battery of SFSTs. I have conducted DUI investigations leading to arrests, including both seated and standing SFSTS, multiple times throughout my career, both on vessels and on land. I also serve as a field trainer for the national park service, training and evaluating new employees in law enforcement policies and practices in the field, including DUI investigations.*

*On October 17th, 2022, at approximately 10:00am I, Ranger HESDON, and my partner, Ranger WHITE, received a call from our dispatch of an individual unconscious in their car near the Boystown fire access road in the Curry village area of the park.*

*Per the call, the reporting party and other pedestrians had observed a vehicle driven partially off the road, stopped, with an individual who appeared to be unconscious in the driver seat who would not respond to knocking on the glass or other means to wake him. We began to drive to the location; medical personnel were also dispatched.*

*When we arrived on scene, on a road just off a crowded parking lot. I observed a blue dodge pickup truck stopped with the front driver side tire off the road and the front of the vehicle pressed against several small trees.*

*As I exited my patrol vehicle, I was approached by two more individuals who stated that the had been able to wake the driver and get him to turn the vehicle off and give them the keys, which they then gave to me. I walked up to the driver side door, which was partially blocked by foliage.*

*I asked the subject in the driver seat, later identified by his driver's license as Larry R. McIver, if there was anyone else in the vehicle and if he had any weapons, he stated no to both. I asked if he*

Speedy Trial Act Applies: **No**  U.S. v. **McIver**
 Criminal Complaint

was hurt or would need medical attention, he stated no to both. I asked McIver if he had been drinking and he stated had, he also stated that he just wanted to get back to his tent. While giving the answers to these questions McIver spoke with a consistent slur, was slow to answer, and made several unintelligible statements.

I observed a bottle of vodka with the seal opened and approximately one quarter of the liquid inside removed. McIver had a cell phone in his hand when I contacted him, I asked him to put his phone down and keep his hands on the steering wheel. McIver dropped his hands and had to be reminded of my request several times and would not put his phone down or in his pocket when asked. When I asked McIver where his driver's license and registration were, he gestured towards the passenger seat, gave a response I could not understand, then made no further effort to retrieve his identification.

I asked McIver to exit his vehicle and step to the rear of the vehicle, opening his driver's side door. After repeating my request, McIver appeared to acknowledge and proceeded to spend approximately two minutes attempting to put his slide style flip-flops on, repeatedly attempting to put his foot in the wrong end of the slide. I repeatedly suggested that McIver step out of the vehicle, and I would retrieve his slides and give them to him to put on, this suggestion was ignored as McIver continued his attempt.

After ending with his slides on the wrong feet, McIver exited the vehicle leaning on the door heavily for support as he stepped out. McIver worked his way to the bumper leaning against his vehicle for support. I observed a knife in McIver's pocket and asked him to turn place his hands against the vehicle, I had to repeat this command several times before McIver complied and I was able to remove the knife from his pocket. I asked McIver to lean against the vehicle as he was unable to sit due to the vehicle's height.

Due to McIver's apparent lack of balance, I determined that it would be unsafe for McIver to attempt any field sobriety tests requiring balance or coordination. Also due to McIver's inability to follow directions I felt he would be unable to complete the horizontal gaze nystagmus or seated battery of tests. Based on his behavior, the report received from dispatch and the individuals on scene, the location of the vehicle and the presence of opened containers of alcohol in the vehicle I believed I had probable cause to arrest McIver for the above listed offenses. I then placed McIver under arrest for the above listed offenses and informed him of such.

After being placed in handcuffs McIver became more verbally aggressive, stating "Don't fucking touch me" and other similar phrases several times, but physically remained compliant.

I searched McIver and his vehicle. Four empty "tall boy" beer cans, with a total capacity of approximately 80 ounces, were found in the passenger area and center console of the vehicle. No

*additional evidence was found on his person, though his wallet containing his driver's license was found in his back pocket.*

*McIver stated several times throughout the contact that the handcuffs were causing him discomfort. The handcuffs were loosened several times and an additional pair of handcuffs was used, followed by a belly chain for comfort. McIver required heavy ranger assistance to enter the transport cage in the patrol vehicle. I asked McIver if he worked in the park, he stated that he did but could not remember where he worked when asked.*

*After McIver was placed in the patrol vehicle Ranger FEY administered a test of McIver's breath using an intoxilyzer. The results placed McIver's blood alcohol content at .38 on the first pass at 10:59am and .37 on the second pass at 11:03am.*

*I was later told by Fey that a woman had approached him and stated that she was trying to use the road that McIver's vehicle had been blocking.*

*McIver was transported to Fresno County Jail by Rangers White and Fitzgerald.*

*Body worn camera footage is available*

I declare under penalty of perjury the information which I have set forth above and on the face of this criminal complaint is true to the best of my knowledge.

_____ Date

JOHN HESDON
Digitally signed by JOHN HESDON
Date: 2022.10.17 17:31:59 -07'00'

*Ranger: John Hesdon #685*
Law Enforcement Park Ranger
Yosemite National Park, CA

Sworn to before me and subscribed in my presence in Yosemite National Park, California.

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 befor~~e~~ on October 18, 2022

10/18/2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

Speedy Trial Act Applies: **No**

U.S. v. **McIver**
Criminal Complaint